**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JUANITA PORTER,

Plaintiff,

-vs-

WILLIAMS SCOTSMAN, INC. d/b/a
WILLSCOT and
ULTIMATE LLC OF KANSAS,
Defendants.

Case No.
Hon.
Mag.

ZACHARY T. RUNYAN (P83671)
RUNYAN LAW GROUP
Attorneys for Plaintiff
31211 Jefferson Ave.
St. Clair Shores, MI 48082
(248) 341-0794
Zrunyan@runyanlawgroup.com

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this Complaint that is either pending or was previously filed and dismissed, transferred or otherwise disposed of after having been assigned to a Judge in this Court.

## PLAINTIFF'S COMPLAINT

NOW COMES Plaintiff, **Juanita Porter**, by and through her attorneys, **Runyan Law Group**, and for her Complaint against the above-named Defendants states as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over the federal claims raised in this action pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Plaintiff seeks damages under 42 U.S.C. § 2000. Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C. §§ 1988 and 12205.

3. This Court has jurisdiction to issue declaratory relief, and other relief under 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in the City of Brighton, County of Livingston, State of Michigan and because Defendants Williams Scotsman, Inc. and Ultimate LLC of Kansas systematically conduct business in the County of Livingston, State of Michigan.

## PARTIES

5. Plaintiff Juanita Porter, an African American female, is a resident of the City of Southfield, County of Oakland, State of Michigan, and at all relevant times, was employed by Defendants.

6. Defendant Williams Scotsman, Inc. ("WillScot") is a Foreign Profit Corporation that systematically conducts business in the County of Livingston, State of Michigan. At all relevant times, Defendant WillScot was one of Plaintiff's employers.

7. Defendant Ultimate LLC of Kansas ("Ultimate") is a Foreign Limited Liability Company that systematically conducts business in the County of Livingston, State of Michigan. At all relevant times, Defendant Ultimate was one of Plaintiff's employers.

## STATEMENT OF FACTS

8. On or about May 19, 2025, Plaintiff began working for Defendant WillScot as a construction and yard worker in the city of Brighton, Michigan, in Livingston County.

9. Plaintiff was working for Defendant WillScot through Defendant Ultimate, a staffing company.

10. Beginning in May 2025, Plaintiff started being subjected to racial harassment.

11. For example, during Plaintiff's first week of employment, a trainer asked her, "How many police officers does it take to screw a light bulb?" When Plaintiff did not respond, the trainer continued, "None because they would just get a black person and beat the black off of him and have him do it."

12. Plaintiff told the trainer that his comments were racist.

13. When Plaintiff reported the incident to her supervisor, the supervisor dismissed her complaint entirely, stating: "oh you're just taking it the wrong way, I don't think he meant it like that."

14. In July 2025, Plaintiff's supervisor referenced lynching, asking Plaintiff to "look over in that tree, who's that hanging over in that tree."

15. In the same month, one of Plaintiff's coworkers told her that she "could not stand…black and old" people.

16. In August 2025, Plaintiff was scheduled to receive additional training from a coworker. However, this coworker told the supervisor: "I'm not training this black b*tch and she probably can't read and Imma get that b*tch fired."

17. This coworker's refusal to train Plaintiff based on her race, combined with the use of racial slurs and threats, further demonstrates the pervasive racial animus Plaintiff faced.

18. On or about October 21, 2025, someone placed a picture of a gorilla on the workplace bulletin board where Plaintiff and other employees could see it.

19. The use of gorilla imagery to demean and dehumanize Black employees is a well-known form of racial harassment.

20. Plaintiff made a complaint to her manager about this racist image.

21. Despite Plaintiff's complaint, the gorilla image remained posted on the bulletin board for multiple weeks.

22. The gorilla picture was only removed when Defendant WillScot needed more room on the bulletin board to post open enrollment paperwork.

23. However, the day after the picture was removed, Plaintiff discovered that the gorilla picture was pinned on the inside of her work locker. **Exhibit 1.**

24. The appearance of the gorilla picture inside Plaintiff's work locker made clear that the gorilla picture and racial harassment were targeted and ongoing.

25. Plaintiff reported this incident to her supervisor, who again failed to take any appropriate remedial measures.

26. On November 11, 2025, after enduring months of unchecked racial harassment, Plaintiff made both a verbal and written complaint to the general manager about the ongoing racism and racial remarks she continued to experience daily.

27. Rather than taking Plaintiff's complaints seriously or conducting a meaningful investigation, the general manager responded dismissively, stating: "I understand that it was a gorilla picture, but did it have your name on it?"

28. Following Plaintiff's protected complaint to the general manager, she was immediately subjected to adverse action.

29. Plaintiff was moved outside to work by herself, isolated from other employees.

30. Defendants' isolation of Plaintiff was motivated, at least in part, by Plaintiff engaging in protected activities, as described above.

31. This reassignment constitutes unlawful retaliation for engaging in protected activity by complaining about race discrimination.

32. On or about November 19, 2025, Ms. Porter was subjected to further retaliation by being forced to transfer to Defendant WillScot's Warren, MI location.

33. Defendants' forced relocation of Plaintiff to the Warren worksite was motivated, at least in part, by Plaintiff engaging in protected activities, as described above.

34. On Plaintiff's first day at the Warren location, Plaintiff's supervisor, Donte Box, told Plaintiff that he often had sexual relations with another female subordinate in a trailer on sight.

35. Box told Plaintiff about his sexual relations with the female employee several times, despite Plaintiff repeatedly objecting to the comments.

36. Box also suggested to Plaintiff that he wanted to have sex with her in the trailer.

37. Plaintiff frequently complained to Defendant Wilscott's manager, Dana Degeer, about Box's sexual harassment,

38. Degeer admitted that he knew that Box was having sex with female subordinates in the trailer.

39. Despite his knowledge, Degeer took no action to stop future harassment.

40. Following Plaintiff's complaints to management, Box continued to sexually harass Plaintiff.

41. For example, on multiple occasions, Box touched Plaintiff's breasts during work.

42. Plaintiff continued to complain to Degeer that Box was sexually harassing Plaintiff and making her uncomfortable.

43. Plaintiff even told Degeer that the sexual harassment from Box was causing Plaintiff significant anxiety, which required medication to manage.

44. Despite her complaints, Degeer did nothing, and Defendant forced Plaintiff to continue working alone with Box in a small trailer for several months.

45. Defendant Willscot has a general policy that you cannot use your phone without permission.

46. Plaintiff obtained permission from Defendant Willsoct to use her phone for a medical appointment on or about September 1, 2026.

47. Despite Plaintiff obtaining permission, Defendant terminated her employment on September 1, 2026, allegedly for using her phone during her medical appointment.

48. Defendant's stated reason for termination was pretext.

49. Defendant's termination of Plaintiff's employment was motivated, at least in part, by Plaintiff engaging in protected activities, as described above.

50. As a result of Defendants' actions, Plaintiff has suffered and will continue to suffer damages including, but not limited to:

a. Stress;
b. Anxiety;
c. Panic attacks;
d. Humiliation;
e. Embarrassment;
f. Depression;
g. Post-Traumatic Stress Disorder;
h. Loss of self-esteem or confidence;
i. Excessive fear, worry, or rumination;
j. Irritability or anger outbursts;
k. Guilt or shame;
l. Hopelessness or helplessness;
m. Difficulty concentrating or memory problems;
n. Emotional exhaustion or burnout;
o. Social withdrawal or isolation;
p. Grief over loss of career or reputation;
q. Loss of enjoyment of life;
r. Loss of purpose or professional identity;

s. Loss of companionship or family strain;

t. Damage to reputation or standing in the community;

u. Difficulty forming or maintaining new employment relationships;

v. Emotional damages;

w. Economic damages;

x. Non-economic Damages;

y. Attorney fees and costs;

z. Other damages to be discovered through the course of litigation

**COUNT I**
**VIOLATION OF MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT**
***(Disparate Treatment)***

51. Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

52. At all material times, Plaintiff was an employee, and Defendants were her employers, covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101, *et seq*.

53. Defendants are vicariously liable for the violation of Plaintiff's Rights under the Michigan Elliott-Larsen Civil Rights Act by their employees and agents under the doctrine of *respondeat superior.*

54. Plaintiff's sex, race and/or color was a factor that made a difference in Defendants' treatment of Plaintiff.

55. Defendants, through their agents, representatives, and employees, were predisposed to discriminate on the basis of sex, race and/or color and acted in accordance with that predisposition.

56. Defendants, through their agents, representatives, and employees, treated Plaintiff differently from similarly situated employees in the terms and conditions of employment, based on the unlawful considerations sex, race and/or color.

57. Defendants' actions were willful, intentional, and/or made in reckless disregard of Plaintiff's rights and sensibilities.

58. As a result of said disregard of Plaintiff's rights and sensibilities, Plaintiff was physically isolated from other employees, forced to relocate to another worksite, subjected to continued racial and sexual harassment, and terminated.

59. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained and continues to sustain injuries and damages.

WHEREFORE Plaintiff respectfully requests this Honorable Court enter judgment on Plaintiff's claims in a sum that the Court or jury find to be fair and just, including attorney fees, costs, and exemplary damages.

## COUNT II
## VIOLATION OF MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT
***(Hostile Work Environment)***

60. Plaintiff re-alleges and incorporates, by reference, the forgoing paragraphs as if fully set forth herein.

61. At all material times, Plaintiff was an employee, and Defendants were her employer, covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101, et seq.

62. Defendants are vicariously liable for the violation of Plaintiff's Rights under the Michigan Elliott-Larsen Civil Rights Act by their employees and agents under the doctrine of *respondeat superior*.

63. Plaintiff was subjected to unwelcomed conduct due to her sex, race and/or color.

64. The unwelcomed conduct complained of was based on Plaintiff's sex, race and/or color.

65. The unwelcomed conduct affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with Plaintiff's work performance and/or creating an intimidating, hostile or offensive work environment.

66. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained and continues to sustain injuries and damages.

WHEREFORE Plaintiff respectfully requests this Honorable Court enter judgment on Plaintiff's claims in a sum that the Court or jury find to be fair and just, including attorney fees, costs, and exemplary damages.

**COUNT III**
**VIOLATION OF MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT**
***(Retaliation)***

67. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

68. Defendants retaliated against Plaintiff for engaging in protected activities including but not limited to filing complaints of sexual harassment, racial harassment and racial discrimination.

69. Plaintiff was subjected to adverse employment actions, including, but not limited to, isolation from other employees, forced relocation to another worksite, continued sexual and racial harassment, and termination.

70. Defendants' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

71. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer damages and injuries.

WHEREFORE Plaintiff respectfully requests this Honorable Court enter judgment on Plaintiff's claims in a sum that the Court or jury find to be fair and just, including attorney fees, costs, and exemplary damages.

**COUNT IV**
**TITLE VII – DISCRIMINATION ON THE BASIS OF RACE/COLOR**

72. Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

73. Plaintiff is a member of a protected class on the basis of race and/or color.

74. Plaintiff, in all respects, was performing her job in a manner that was consistent with Defendants' legitimate business expectations.

75. Defendants discriminated against Plaintiff, as described above, in ways including, but not limited to, isolating Plaintiff from other employees, forcing Plaintiff to relocate to another worksite, failing to stop the racial harassment to which Plaintiff was subjected, and terminating her employment.

76. Defendants' actions were taken with a willful and wanton disregard of Plaintiff's Rights under Title VII.

77. As a direct and proximate cause of said unlawful employment practices, and in disregard of Plaintiff's rights and sensibilities, Plaintiff has suffered injuries and damages.

WHEREFORE Plaintiff respectfully requests this Honorable Court enter judgment on Plaintiff's claims in a sum that the Court or jury find to be fair and just, including attorney fees, costs, and exemplary damages.

**COUNT V**
**TITLE VII – RETALIATION**

78. Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

79. Defendants retaliated against Plaintiff for engaging in protected activities including but not limited to filing/reporting complaints of racial harassment and discrimination.

80. Defendants subjected Plaintiff to adverse employment actions, including, but not limited to, isolating Plaintiff from other employees, forcing Plaintiff to relocate to another worksite, failing to stop the racial harassment to which Plaintiff was subjected, and terminating her employment.

81. Defendants' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

82. Defendants' actions were taken with a willful and wanton disregard of Plaintiff's Rights under Title VII.

83. As a direct and proximate cause of said unlawful employment practices, and in disregard of Plaintiff's rights and sensibilities, Plaintiff has suffered injuries and damages.

WHEREFORE Plaintiff respectfully requests this Honorable Court enter judgment on Plaintiff's claims in a sum that the Court or jury find to be fair and just, including attorney fees, costs, and exemplary damages.

## COUNT VI
## TITLE VII – HOSTILE WORK ENVIRONMENT

84. Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

85. Plaintiff was subjected to unwelcomed conduct due to her sex, race and/or color.

86. The unwelcomed conduct complained of was based on Plaintiff's sex, race and/or color.

87. The unwelcomed conduct affected a term or condition of Plaintiff's employment and/or had the purpose or effect of unreasonably interfering with Plaintiff's work performance and/or creating an intimidating, hostile or offensive work environment.

88. As a direct and proximate cause of Defendants' unlawful actions, Plaintiff has suffered injuries and damages.

WHEREFORE Plaintiff respectfully requests this Honorable Court enter judgment on Plaintiff's claims in a sum that the Court or jury find to be fair and just, including attorney fees, costs, and exemplary damages.

## DEMAND FOR RELIEF

Plaintiff requests that this Court:

a. Assert jurisdiction over this matter;

b. Enter judgment in favor of Plaintiff and against Defendants;

c. Award Plaintiff compensatory and punitive damages;

d. Award costs and attorneys' fees; and

e. Grant other appropriate relief

Respectfully submitted,

*/s/ Zachary T. Runyan*

Zachary T. Runyan (P83671)
**RUNYAN LAW GROUP**
31211 Jefferson Ave
Saint Clair Shores, MI 48082
Phone: (248) 341-0794
Email:zrunyan@runyanlawgroup.com

Dated: November 5, 2026

## JURY DEMAND

Plaintiff, by and through counsel, hereby requests a trial by jury in the above-captioned matter.

Respectfully submitted,

*/s/ Zachary T. Runyan*

Zachary T. Runyan (P83671)
**RUNYAN LAW GROUP**
31211 Jefferson Ave
Saint Clair Shores, MI 48082
Phone: (248) 341-0794
Email: zrunyan@runyanlawgroup.com

Dated: November 5, 2026